IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                        )
MELODY BETTS-COSSENS for                )
CHRISTOPHER MARCUS BETTS,               )
                                        )
                Plaintiff,              )
v.                                      ) Civ. No. 16-00409 ACK-KJM
                                        )
NANCY A. BERRYHILL, Acting              )
Commissioner of Social Security,        )
                                        )
                Defendant.              )
_____)

## ORDER REVERSING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS

For the reasons to be discussed in its written order, the Court REVERSES the decision of the Commissioner and REMANDS for further administrative proceedings consistent with this Order.

### BACKGROUND

On June 3, 2012, Plaintiff Christopher Marcus Betts ("Plaintiff") filed an application for Social Security Disability Insurance ("SSDI") benefits. AR 18. Plaintiff also filed for supplemental security income ("SSI") on June 14, 2012. Id. In both applications, Plaintiff alleged disability beginning October 25, 2010. Id. The application was initially denied on November 23, 2012, and upon reconsideration on September 12, 2013. AR 121-25, 128-36. Plaintiff then requested a hearing before an administrative law judge ("ALJ"),

1

which was held on August 11, 2014. AR 36-64. On October 31, 2014, the ALJ issued her written decision finding Plaintiff not disabled. AR 30. Plaintiff filed a request with the Appeals Council to review the ALJ's decision on December 16, 2014. AR 12-14. Plaintiff passed away on January 11, 2015. Complaint ¶ 4; AR 614, 638. The Appeals Council denied his request and adopted the ALJ's decision as the final decision of the Commission on June 20, 2016. AR 2-7.

Plaintiff's former wife, on behalf of Plaintiff, filed a complaint on June 26, 2016 seeking a review of the denial of Plaintiff's applications for SSDI and SSI benefits. ECF No. 1. On March 15, 2017, Plaintiff filed his opening brief. ECF No. 14 ("Opening Br."). Defendant, the Acting Commissioner of Social Security[1] ("Commissioner"), filed her answering brief on May 4, 2017. ECF No. 16 ("Ans. Br."). Plaintiff filed his reply brief on May 15, 2017. ECF No. 17 ("Reply Br.").

The Court held a hearing on June 13, 2017 regarding Plaintiff's requested review of the Commissioner's decision.

## STANDARD

A district court has jurisdiction pursuant to 42

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), current Acting Commissioner of Social Security Nancy A. Berryhill has been automatically substituted in place of the original defendant Carolyn W. Colvin.

U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security.[2]

A final decision by the Commissioner denying Social Security disability benefits will not be disturbed by the reviewing district court if it is free of legal error and supported by substantial evidence.  See 42 U.S.C. § 405(g); Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016) (reviewing a district court's decision de novo).  Even if a decision is supported by substantial evidence, it "will still be set aside if the ALJ did not apply proper legal standards."  See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).

In determining the existence of substantial evidence, the administrative record must be considered as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions.  See id.  "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the

_____

[2] 42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

Commissioner." Id. (internal quotation marks omitted). Rather, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

## DISCUSSION

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); see 42 U.S.C. § 423(d)(2)(A). A claimant must satisfy both requirements in order to qualify as "disabled" under the Social Security Act. Tackett, 180 F.3d at 1098.

### I. The Social Security Administration's Five-Step Process for Determining Disability

The Social Security regulations set forth a five-step sequential process for determining whether a claimant is disabled. Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir.

2005); see 20 C.F.R. § 404.1520.[3]  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  Ukolov, 420 F.3d at 1003 (citations omitted in original).  The claimant bears the burden of proof as to steps one through four, whereas the burden shifts to the Social Security Administration ("SSA") for step five.  Tackett, 180 F.3d at 1098.

At step one the ALJ will consider a claimant's work activity, if any.  20 C.F.R. § 404.1520(a)(4)(i).  If the ALJ finds the claimant is engaged in substantial gainful activity he will determine that the claimant is not disabled, regardless of the claimant's medical condition, age, education, or work experience.  20 C.F.R. § 404.1520(b).  Substantial gainful activity is work that is defined as both substantial – i.e. work activity involving significant physical or mental activities – and gainful – i.e. work activity done for pay or profit.  20 C.F.R. § 404.1572.  If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  Tackett, 180 F.3d at 1098.

Step two requires the ALJ to consider the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)

_____

[3] As the relevant provisions governing SSI set forth in 20 C.F.R. Part 416 are identical to those for SSDI, as set forth in 20 C.F.R. Part 404, the Court will only cite to the latter.

(4)(ii).  Only if the claimant has an impairment or combination

of impairments that "significantly limits [his] physical or

mental ability to do basic work activities" will the analysis

proceed to step three.  20 C.F.R. § 404.1520(c).  If not, the

ALJ will find the claimant is not disabled and the analysis

stops.  20 C.F.R. § 404.1520(a)(4)(ii).

The severity of the claimant's impairments is also

considered at step three.  20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ will determine whether the claimant's impairments

meet or medically equal the criteria of an impairment

specifically described in the regulations.  Id.; see also 20

C.F.R. Part 404, Subpart P, App. 1.  If the impairments do meet

or equal these criteria, the claimant is deemed disabled and the

analysis ends.  20 C.F.R. § 404.1520(a)(4)(iii).  If not, the

analysis proceeds to step four.  20 C.F.R. § 404.1520(e).

Step four first requires the ALJ to determine the

claimant's residual functional capacity ("RFC").  Id.  RFC is

defined as the most the claimant can still do in a work setting

despite his physical and mental limitations.  20 C.F.R. §

404.1545(a)(1).  In assessing a claimant's RFC, the ALJ will

consider all of the relevant evidence in the claimant's case

record regarding both severe and non-severe impairments.  20

C.F.R. § 404.1545.  This assessment is then used to determine

whether the claimant can still perform his past relevant work.

20 C.F.R. § 404.1520(e).  Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1). The ALJ will find that the claimant is not disabled if he can still perform his past relevant work, at which point the analysis will end.  Otherwise, the ALJ moves to step five.

In the fifth and final step, the ALJ will once again consider the claimant's RFC, as well as his age, education, and work experience, in order to determine whether the claimant can perform other work.  20 C.F.R. § 404.1520(a)(4)(v).  Here, the Commissioner is responsible for providing "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do."  20 C.F.R. § 404.1560(c)(2).  If the claimant is unable to perform other work, he is deemed disabled; if he can make an adjustment to other available work, he is considered not disabled.  20 C.F.R. § 404.1520(g)(1).

## II.  The ALJ's Analysis

The ALJ found that at step one, Plaintiff had not engaged in gainful activity since October 25, 2010, the alleged onset date, and at step two, that he suffered from the following severe impairments: cirrhosis of the liver, hypertension, nonalcoholic steatohepatitis, attention deficit hyperactivity

disorder, mood disorder, and a history of alcohol abuse.  AR 20-
21.  Plaintiff disagrees with this determination because he also
believes that he had a severe impairment of psoriasis.  Opening
Br. at 5.

At the third step, the ALJ found that Plaintiff did
not have an impairment or a combination of impairments that met
or medically equaled the severity of an impairment listed in 20
C.F.R. Part 404, Subpart P, Appendix 1.  AR 21.  The ALJ did not
discuss whether Plaintiff met listing 8.05 which covers skin
conditions, such as psoriasis.

Moving to step four, the ALJ determined that Plaintiff
has the RFC to perform light work.  AR 22.  That is, he could:
lift and carry up to 10 pounds frequently and 20 pounds
occasionally and stand, walk, or sit 6 hours out of an 8-hour
workday with customary breaks.  Id.  In addition, the ALJ
determined that Plaintiff could:

>occasionally kneel, stoop, crawl, and
>crouch; occasionally climb ramps and stairs;
>never climb ladders, ropes, or scaffolds;
>frequently use the upper extremities for
>fine and gross manipulations and reaching in
>all directions; sustain concentration and
>attention, persistence and pace in two hour
>blocks of time to complete a normal workday
>. . . interact and respond appropriately to
>coworkers, supervisors, and the general
>public . . . respond appropriately to
>routine changes in the work setting . . .
>understand, remember, and carry out . . .
>both detailed and complex tasks; and he
>would be off task 5% of the workday due to

> distractions from psychologically based
> symptoms.

Id. Based on this RFC, the ALJ determined at step four that

Plaintiff is able to perform past relevant work as a "drafter

designer"[4] and denied Plaintiff's claim on this basis.[5]  AR 29–

30.  Plaintiff disagrees and believes that he was unable to

perform past relevant work.  Opening Br. at 6.

### III.  Whether the ALJ Properly Considered Evidence of Plaintiff's Psoriasis

#### i.  Whether the ALJ Properly Evaluated Dr. Kim's Opinion

Plaintiff argues that the ALJ improperly rejected the

opinion of Plaintiff's primary treating physician, Dr. Jonathan

Kim, that Plaintiff's psoriasis would impact his ability to

work.  Plaintiff argues that this error resulted in improper

findings at steps two and three and the RFC determination.

Opening Br. at 17; Reply Br. at 3–4.

A treating physician's opinion should be given

controlling weight when it is "supported by medically acceptable

clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in [the] case

record."  Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014)

---

[4] Plaintiff previously worked as a project manager, designing swimming pools.  AR 240.

[5] Having determined that Plaintiff was able to perform past relevant work, the ALJ did not reach step five.

(alteration in original).  "To reject an uncontradicted opinion

of a treating physician, the ALJ must provide clear and

convincing reasons that are supported by substantial evidence."

Id. at 1160-61 (internal quotation marks and citation omitted).[6]

These reasons cannot be a list of objective findings followed by

bare conclusions.  See Embrey v. Brown, 849 F.2d 418, 421 (9th

Cir. 1988).  Rather, the ALJ must put forth her own

interpretations of the objective evidence and explain how these

relate to the specific medical opinions and findings she

rejects.  Id. at 421-22.

On March 26, 2014, Dr. Kim reported that Plaintiff had

---

[6] Defendant argues that Dr. Kim's opinion was controverted
by the opinion of Dr. Kevin Adams, Plaintiff's consultative
examiner, and Dr. Robert Dy, Plaintiff's treating
gastroenterologist.  If Dr. Kim's opinion was controverted, then
a different standard would apply and the ALJ could only reject
it by providing "specific and legitimate reasons that are
supported by substantial evidence."  Ghanim, 763 F.3d at 1161.
    The main focus of Dr. Adams's examination is Plaintiff's
liver cirrhosis.  AR 450.  He solely mentioned that Plaintiff
had psoriasis.  AR. 450-455.  Dr. Adams opined that Plaintiff's
functional capacity was not limited.  AR 455.  Dr. Dy merely
stated that the patient was troubled by psoriasis, which he
feels has slowly improved.  AR 482.  However, neither of these
doctors opined on whether Plaintiff's psoriasis would impact his
ability to work.  See AR 450-55, 474-78, 482-87.  Therefore, the
"clear and convincing" standard is appropriate here.
    However, even if the Court were to apply the "specific and
legitimate" standard as opposed to the "clear and convincing"
standard, the Court notes that its ultimate finding—that the ALJ
erred in evaluating Dr. Kim's opinion—would be the same because
the ALJ did not provide any specific and legitimate reasons for
rejecting it.

psoriasis that has persisted for at least three months despite continuing treatment. AR 552. Dr. Kim further reported that the pain, itching, and sensitivity from the psoriasis would impact Plaintiff's ability to work. Id. He said that the psoriasis will cause Plaintiff discomfort throughout the day. Id. Based on this conclusion and other findings, Dr. Kim concluded that Plaintiff was not capable of working an 8-hour workday of 40 hours per week. AR 550.

The ALJ noted Dr. Kim's opinion on the psoriasis. AR 28. The ALJ rejected Dr. Kim's functional assessment as a whole because it was not supported by medically acceptable clinical or diagnostic findings and was inconsistent with the objective medical evidence and Dr. Kim's own treatment records.[7] Id.

---

[7] The ALJ's opinion states:

> Dr. Kim indicated that the claimant's symptoms were chronic fatigue and sleep disturbance, he has not been referred for liver transplant, and his psoriasis affects his ability to work. Dr. Kim concluded the claimant was not capable of working an 8-hour workday 40 hours per week. The undersigned finds this conclusion has no probative value and rejects it. As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance . . . Dr. Kim . . . did not provide medically acceptable clinical or diagnostic findings to support the functional assessment. This opinion is
(continued . . . )

However, the ALJ did not explain why she was rejecting Dr. Kim's particular opinion regarding the psoriasis. Id. In regard to the psoriasis, the ALJ only mentioned that physical examinations showed multiple scale plaques on Plaintiff's knees and elbows. Id.

While the ALJ "is not required to discuss evidence that is neither significant nor probative," Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003), an ALJ errs by improperly ignoring significant and probative record evidence. Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012) (finding error where the ALJ "improperly ignored or discounted significant and probative evidence in the record"); see Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding that the ALJ "must explain why significant probative evidence has been rejected" (internal citation and quotation omitted)). "Medical opinions that conflict with the ALJ's findings are considered significant and probative." Montalbo v. Colvin, Civ. No. 16-00306 ACK-RLP, 2017 WL 434001, at *10 (D.

---

> inconsistent with the objective medical evidence as whole already discussed above in this decision. Most importantly, this opinion is also inconsistent with Dr. Kim's own treatment records as described in detail above.

AR 28 (emphasis added).

Haw. Feb. 1, 2017) (citing Stewart v. Astrue, No. C12-99, 2012
WL 3089650, at *7 (W.D. Wash. Aug. 27, 2012)).

Although the ALJ did not have to agree with each of
Dr. Kim's opinions, she must have, at the very least, offered
sufficiently specific and legitimate reasons for each opinion
she rejected; the ALJ may not specifically reject some opinions
and wholly disregard others. See Smolen v. Chater, 80 F.3d
1273, 1286 (9th Cir. 1996) (finding the ALJ legally erred by
disregarding certain medical opinions and making contrary
findings, despite discussing other medical opinions from the
same doctors); Khan v. Colvin, No. EDCV 12-2106-MAN, 2014 WL
2865173, at *8 (C.D. Cal. June 24, 2014) ("Thus, while the ALJ
need not accept the full extent of Dr. Skopec's opinion, the ALJ
may not reject it, or significant parts of it, without giving
specific and legitimate reasons for so doing.").

District courts routinely find error where the ALJ
fails to address opinions or limitations found by treating
physicians. For example, in Harris v. Berryhill, the court held
that the ALJ erred in failing to address the treating
physicians' opinions regarding the claimant's manipulative
restrictions in the RFC determination or to identify evidence
undermining them. Case No. 1:15-CV-01429-JLT, 2017 WL 836457,
at *9-10 (E.D. Cal. Mar. 3, 2017). Similarly, in Beckstead v.
Colvin, the court concluded that the ALJ erred in failing to

provide any reason, much less a specific and legitimate one, for
rejecting a treating physician's findings that the plaintiff
needed to be off his feet every 30 minutes and could not do
overhead work. No. CV 11-10622 AN, 2013 WL 663442, at *3 (C.D.
Cal. Feb. 22, 2013). Therefore, the ALJ erred because she
failed to offer any reason for rejecting Dr. Kim's opinion as to
Plaintiff's psoriasis.[8]

---

[8] Even if, assuming arguendo, the Court were to find that
the ALJ's reasons for rejecting Dr. Kim's functional assessment
as a whole applied to her rejection of Dr. Kim's opinion as to
Plaintiff's psoriasis, the Court's conclusion would not change.
The generic assertions the ALJ provides—that Dr. Kim's opinion
was not supported by medically acceptable clinical or diagnostic
findings, was inconsistent with the objective medical evidence
and his own treatment records, and heavily relied on Plaintiff's
report of symptoms and limitations—without more are
insufficient. See, e.g., Embrey, 849 F.2d at 421-22 (9th Cir.
1988) (finding inadequate the ALJ's conclusion that "objective
factors point towards an adverse conclusion" without making any
"effort to relate any of these objective factors to any of the
specific medical opinions and findings he rejects"); Hart v.
Colvin, 150 F. Supp. 3d 1085, 1090-91 (D. Ariz. 2015) (finding
the ALJ failed to give sufficiently specific reasons for
rejecting a medical opinion where he failed to identify both the
specific findings that were inconsistent and the specific
contrary medical evidence); Rowsey v. Colvin, No. CV 13-5627
RNB, 2014 WL 2711138, at *2 (C.D. Cal. June 13, 2014) (holding
that the conclusory statement that the opinion was inconsistent
with doctor's own treatment records and those of any other
doctor was not sufficiently specific).

Indeed, the ALJ provided no examples of where the record
supported her findings of inconsistencies between Dr. Kim's
opinion on the psoriasis and his own treatment records or the
objective medical evidence. The ALJ also did not explain how
Dr. Kim's opinion on the psoriasis was not supported by
medically acceptable clinical or diagnostic findings. Nor did
the ALJ link the additional reason she provided for rejecting
(continued . . . )

Defendant argues that the ALJ's rejection of Dr. Kim's opinion on Plaintiff's psoriasis was proper because: (1) the ALJ decided to give greater weight to the opinion of examining doctor, Dr. Kevin Adams, instead of Dr. Kim; (2) Dr. Kim's opinion was inconsistent with his own treatment records and the record as a whole; and (3) "additional records by the ALJ support [the] RFC finding and consideration of Plaintiff's psoriasis," such as treatment notes from Dr. Robert Dy. Ans. Br. at 6-8. However, the Court cannot affirm the ALJ's decision on grounds which the ALJ did not rely. This Court is "constrained to review the reasons the ALJ asserts." Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (internal quotation marks and citation omitted). Otherwise, "a reviewing court will be unable to review those reasons meaningfully and without improperly substituting [its] conclusions for the ALJ's or speculating as to the grounds for the ALJ's conclusions." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and alteration omitted); see Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2008)

---

Dr. Kim's overall conclusion—that Dr. Kim relied heavily on Plaintiff's subjective report of symptoms and limitations—to Dr. Kim's opinion on Plaintiff's psoriasis. Therefore, the Court finds that the ALJ erred because she did not provide clear and convincing reasons for rejecting Dr. Kim's opinion on Plaintiff's psoriasis.

("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Therefore, the Court cannot consider Defendant's additional arguments, which the ALJ did not make herself.

Furthermore, as previously discussed, Dr. Adams did not opine on whether Plaintiff's psoriasis would impact Plaintiff's ability to work and his report merely mentioned that Plaintiff had psoriasis. AR 450-55. Likewise, Dr. Dy merely stated that the patient was troubled by psoriasis, which he feels has slowly improved, but did not opine on whether the psoriasis would impact Plaintiff's ability to work. AR 482. Accordingly, the Court does not find Defendant's arguments persuasive.

Plaintiff further argues that this error was not harmless because it impacted the ALJ's findings at steps two and three and the RFC determination. Had the ALJ properly considered Dr. Kim's opinion, the ALJ might have: (1) found psoriasis to be severe at step two, which would further impact the ALJ's analysis at step three; and/or (2) given a more

restrictive RFC than the one given in her decision.[9]  See Crose

v. Colvin, No. C12-5590 BHS, 2014 WL 118937, at *6 (W.D. Wash.

Jan. 13, 2014) (holding that failure to provide specific and

legitimate reasons for rejecting the physician's opinion was not

harmless where crediting the opinion would have led to a more

restrictive RFC).  Therefore, the Court finds that the ALJ's

failure to provide clear and convincing reasons for rejecting

Dr. Kim's opinion on Plaintiff's psoriasis was harmful.

### ii. Whether the ALJ Properly Evaluated the Evidence of Psoriasis at Step Two

Plaintiff further argues that the ALJ erred at step

two for failing to find Plaintiff's psoriasis to be severe.

Defendant seemingly concedes this point because, as discussed in

---

[9] Defendant argues that Plaintiff's psoriasis would not meet a listing at step three.  The Court declines to consider this argument because, given that the ALJ did not reach this issue, Plaintiff has not based his appeal on step three and in turn has not argued that the psoriasis would in fact meet a listing before this Court.  However, the Court finds that because the ALJ found the psoriasis non-severe at step two, the issue of whether the psoriasis met or equaled Listing 8.05 was not present on appeal.  Opening Br. at 17.

Defendant also incorrectly argues that Plaintiff did not raise the argument that his psoriasis met a listing until after the ALJ's decision.  In Plaintiff's pre-trial brief to the ALJ, Plaintiff argues that "the psoriatic condition arguably meets the listings.  Even without considering the listings, if [Plaintiff's] condition flares up on a regular basis that affects his ability to do SGA."  AR 310.

On remand, Plaintiff will have an opportunity to establish that the psoriasis meets or equals a listing at step three, which the ALJ will then have to evaluate.

more detail herein, Defendant merely presents an argument to show why such error was harmless.  Ans. Br. at 6.

At step two, an impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities.  Wilson v. Colvin, 583 F. App'x 649, 651 (9th Cir. 2014) (citing Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (July 2, 1996)); see also Hegel v. Astrue, 325 F. App'x 580, 581 (9th Cir. 2009) ("The evaluation of whether an impairment(s) is 'severe' . . . requires an assessment of the functionally limiting effects of an impairment(s) on an individual's ability to do basic work activities."  (citing SSR 96-3p)).  The threshold to find a severe impairment is de minimis.  See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting that "the step-two inquiry is a de minimis screening device to dispose of groundless claims").

The record is full of references to Plaintiff's psoriasis and Plaintiff's psoriasis treatment.  See, e.g., AR 55, 317-30, 338-40, 433, 450, 462-67, 482, 505, 525-27, 592. Plaintiff's elbow was bleeding at the hearing from the psoriasis.  AR 55.  Dr. Kim stated that Plaintiff had psoriasis that has persisted for at least three months despite continuing treatment as prescribed and opined that the psoriasis impacted

Plaintiff's ability to work because of pain and itching from the rash which would cause discomfort throughout the day. AR 552. In addition, Plaintiff testified that the psoriasis would limit his ability to work because the itching at night impacted his ability to sleep. AR 23, 55-56. In light of this evidence and the de minimis threshold, the Court finds that the ALJ erred in holding that Plaintiff's psoriasis was a non-severe condition at step two. See Beason v. Comm'r of Soc. Sec., 1:15-CV-01281-DAD-EPG, 2017 WL 603495, at *5-6 (E.D. Cal. Feb. 14, 2017) (holding that the ALJ erred in failing to find Plaintiff's psoriasis severe because the evidence showed that Plaintiff's psoriasis caused him significant pain even when the condition was treated by medication).

Defendant argues that even if the ALJ should have found the psoriasis severe at step two, that error would be harmless because the ALJ "addressed the condition extensively when determining Plaintiff's RFC." Ans. Br. at 6 (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding the ALJ's error in failing to list an impairment at step two was harmless because the ALJ extensively discussed the impairment at step four and considered any limitations posed by the impairment at step four)). The Court finds Lewis distinguishable. Nowhere in the ALJ's opinion does she specifically consider the limitations posed by the psoriasis or discuss it in any detail. Therefore,

the Court finds that the ALJ's error in regard to the consideration of his psoriasis was harmful and remands for a proper consideration of the evidence.

### IV. Whether the ALJ Erred by Failing to Discuss Parts of Plaintiff's WAIS-IV Sub-Test Results

Plaintiff argues that the ALJ erred because she did not discuss Plaintiff's WAIS-IV test results other than Plaintiff's full scale IQ of 92.[10] Plaintiff's psychological consultative examiner, Dr. Noelani Perreira, Psy.D., performed WAIS-IV tests in October 2012. AR 439-47. In regard to working memory, she found that Plaintiff's "ability to sustain attention, concentrate, and exert mental control is in the low average range. He performed better than approximately 18% of his peers in this area." AR 443. Dr. Perreira further explained, "A weakness in mental control may make the processing of complex information more time-consuming for [Plaintiff], draining his mental energies more quickly as compared to others at his level of ability, and perhaps result in more frequent errors on a variety of learning or complex work tasks." AR 443.

As to processing speed, Dr. Perreira found Plaintiff's

---

[10] The Wechsler Adult Intelligence Scale ("WAIS") is used to assist psychologists and other professionals in measuring intelligence. See About The Wechsler Intelligence Test, Wechsler Test, http://wechslertest.com/about-wechsler-intelligence-test (last visited June 14, 2017).

ability to process simple or routine visual material without making errors is in the low average range when compared to his peers, performing better than only 14% of them in processing speed tasks. AR 444. Dr. Perreira further explained:

> Processing visual material quickly is an ability that [Plaintiff] performs poorly as compared to his verbal reasoning ability. Processing speed is an indication of the rapidity with which [Plaintiff] can mentally process simple or routine information without making errors. Because learning often involves a combination of routine information processing (such as reason) and complex information processing (such as reasoning), a weakness in the speed of processing routine information may make the task of comprehending novel information more time-consuming and difficult for [Plaintiff]. Thus, this weakness in simple visual scanning and tracking may leave him less time and mental energy for the complex task of understanding new material.

Id. Dr. Perreira performed other WAIS-IV tests, including general intellectual ability, verbal comprehension, and perceptual reasoning. AR 442-44. Based on the findings of all of these tests and others, however, Dr. Perreira found that in regard to residual functioning capacity Plaintiff was not significantly limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. AR 445-46.

The ALJ gave significant, but not full weight, to Dr. Perreira's opinions. AR 28-29. She detailed Dr. Perreira's

findings, including that Plaintiff reported a history of ADHD and bipolar disorder and that in Plaintiff's mental status examination he revealed an overall unremarkable mental status. AR 27. The ALJ discussed that Dr. Perreira found that Plaintiff was able to accurately respond to questions, his speech was organized and articulate, his thought organization was linear and consistent, his perception was normal, and his insight and judgment were normal. Id. The ALJ also stated that Plaintiff had an IQ of 92 and that Dr. Perreira assessed a Global Assessment of Functioning ("GAF") score of 63, indicating mild symptoms or difficulty functioning. Id. The ALJ noted that Dr. Perreira opined that the claimant was not significantly limited in all mental functional areas. Id. The ALJ, however, did not discuss his WAIS-IV test results related to working memory or processing speed. In making her RFC finding on Plaintiff's mental limitations, the ALJ concluded, inter alia, that Plaintiff would be able to sustain concentration and attention, persistence and pace in two-hour blocks of time in order to complete a normal workday and that Plaintiff could understand, remember and carry out detailed and complex tasks. AR 22.

As the Court previously discussed, the ALJ "is not required to discuss evidence that is neither significant nor probative," Howard, 341 F.3d at 1012, but errs by improperly ignoring significant and probative record evidence. Hill, 698

F.3d at 1161; see Houghton v. Comm'r of Soc. Sec. Admin., 493 F.

App'x 843, 845 (9th Cir. 2012) (rejecting claim that ALJ failed

to consider evidence of, inter alia, claimant's heart condition

and sleep apnea where claimant "has not shown that the ALJ

discounted significant probative evidence of functional

limitations or work-related restrictions" arising from the

conditions).  An ALJ may not reject significant probative

evidence without explanation and must state reasons for

disregarding such evidence.  Flores v. Shalala, 49 F.3d 562,

570–71 (9th Cir. 1995).  Neither party directly discusses what

the Court finds to be the central issue here: whether

Plaintiff's WAIS-IV sub-test results regarding working memory

and processing speed were significant and probative.[11]

---

[11] Plaintiff makes two arguments seemingly in attempt to demonstrate that the WAIS-IV test results are significant. First, Plaintiff states that the WAIS-IV test results are discussed in great detail in the SSA's Program Operations Manual System ("POMS"), which states that reporting of sub-test scores is essential where cognitive deficits require assessment.  See POMS DI 24515.055A.  However, Plaintiff also notes that POMS is not binding on the Commissioner.  See Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1073 (9th Cir. 2010) ("POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ.").

Second, Plaintiff states that the Supreme Court held in Atkins v. Virginia, 536 U.S. 304, 309 n.5 (2002) that the WAIS-III, the predecessor to the WAIS-IV, is the "standard for instrument in the United States for assessing intellectual functioning."  Atkins involved the issue of whether mentally disabled individuals could be subject to the death penalty under (continued . . . )

The Court finds that Plaintiff's WAIS-IV sub-tests
regarding working memory and processing speech were significant
and probative and therefore the ALJ erred in failing to discuss
why she did not include them in her RFC finding.  In Dawson v.
Colvin, No. C14-501-BJR, 2015 WL 1064413 (W.D. Wash. Mar. 11,
2015), plaintiff argued that the ALJ erred in evaluating a
psychological evaluation.  Id. at *13.  The ALJ credited the
assessment of the plaintiff's IQ scores but failed to evaluate
the doctor's conclusion regarding, inter alia, plaintiff's
processing speed from the WAIS-III test.  Id.  The plaintiff
argued that this error was not harmless because if the ALJ had
adopted the doctor's conclusion regarding processing speed, the
ALJ's ultimate decision as to disability would have been
different.  Id.

The court agreed with the plaintiff and held that the
ALJ erred when failing to discuss the test results regarding
processing speed because they were significant and probative
evidence.  Id. at *14.  The court remanded the case, instructing
the ALJ to discuss whether the doctor's test results and

the Eighth Amendment which prohibits cruel and unusual
punishment.  Although these arguments establish that the WAIS-IV
is an important test in determining intellectual functioning and
therefore important to findings of disability in SSI and SSDI
cases generally, these arguments do not address whether the
WAIS-IV sub-tests at issue were significant and probative in
this case.

findings regarding plaintiff's limited processing speed were probative of plaintiff's functioning.  Id.

Likewise, here, the ALJ did not incorporate Plaintiff's WAIS-IV sub-test results in regard to working memory and processing speed into her RFC finding.[12]  Plaintiff's results from the working memory and processing speed sub-tests revealed functional limitations or work-related restrictions that were not adopted in the ALJ's RFC finding, particularly regarding Plaintiff's ability to handle detailed and complex tasks.  Cf. Field v. Colvin, No. C13-05623-RBL-JLW, 2014 WL 2765148, at *6 (W.D. Wash. June 18, 2014) (holding that ALJ did not err when she ignored objective psychological test evidence because, inter alia, it did not indicate that additional RFC limitations were necessary); Roberts v. Astrue, No. EDCV 11-1373 JC, 2012 WL 1032903, at *4 (C.D. Cal. Mar. 27, 2012) (holding that the ALJ's failure to discuss medical evidence was not error because it did not call for functional limitations not already accounted for in the ALJ's RFC assessment).  This error was not harmless because

---

[12] As previously discussed, these results concluded that Plaintiff was only able to sustain attention and concentrate better than 18% of his peers and that he was only able to process simple or routine visual material without making errors better than 14% of his peers.  The results further showed that Plaintiff may perform more frequent errors on a variety of complex work tasks and leave him less time and mental energy for the complex task of understanding new material.

the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the [sub-test results], could have reached a different disability determination." <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173 (9th Cir. 2015). If the ALJ had adopted the doctor's conclusion regarding working memory and processing speed, the ALJ's RFC finding would likely have been different. This would impact the ALJ's analysis at step four and five.[13]

Defendant argues that the ALJ's RFC finding was proper because it was supported by substantial evidence from Plaintiff's treating psychiatrist, Dr. Rodney K. Yamaki and Dr. Perreira, and agency regulations require that controlling weight be given to a treating doctor when that opinion is consistent with the record and other opinions. <u>See</u> 20 C.F.R. §

---

[13] Plaintiff, seemingly in an attempt to explain why the WAIS-IV sub-tests results were significant and probative, argues that the vocational expert ("VE") said that Plaintiff would not be able to return to his prior work when he was questioned about Plaintiff's ability to do prior work activity based on the conclusions in the sub-test scores. However, this is not precisely what happened at the ALJ's hearing.

At the ALJ's hearing, Plaintiff's attorney asked the VE whether Plaintiff would be able to perform his past relevant work if the "processing of complex information [would] not be done at the normal rate of speed expected by an employer and there would be frequent errors in doing complex work tasks." AR 63. Based on this hypothetical, the VE responded that Plaintiff would not be able to perform past relevant work. <u>Id.</u> However, Plaintiff's sub-test scores state that "[a] weakness in mental control <u>may</u> make the processing of complex information more time consuming for [Plaintiff] . . . and <u>perhaps</u> result in <u>more frequent errors</u> on a variety of complex work tasks." AR 443 (emphasis added).

404.1527(c)(2).

Dr. Yamaki opined that Plaintiff was capable of:
understanding and remembering simple work instructions;
maintaining regular job attendance and persisting at simple,
repetitive work tasks on a consistent basis under ordinary
supervision; getting along with supervisors and co-workers if
contact were minimal; and adapting/coping with a low demand,
entry-level job. AR 435-36. However, Dr. Yamaki did not opine
on whether Plaintiff would be able to understand, remember, and
carry out both detailed and complex tasks, which the ALJ
specifically concluded in her RFC finding and was, at the very
least, not fully supported by the WAIS-IV sub-test results. In
addition, the ALJ adopted Dr. Perreira's RFC opinion that
Plaintiff was not significantly limited but that RFC opinion
failed to discuss Plaintiff's ability to understand, remember,
and carry out both detailed and complex tasks, which was
addressed in the WAIS-IV sub-test results.

Defendant also argues that the ALJ would be
impermissibly substituting her own opinion for the opinion of a
physician if she were to rely on the WAIS-IV sub-test results in
making her RFC finding. However, the WAIS-IV sub-test results
are from the report of Plaintiff's psychological consultative
examiner. Therefore, the ALJ would not be "playing doctor" if
she relied on these results. Accordingly, the Court finds that

27

the ALJ erred in failing to discuss why she did not incorporate the WAIS-IV sub-test results into the RFC determination and remands the case for the proper consideration of this evidence.[14]

## V.    Harmless Error & Remand

As previously discussed, the errors at issue were not harmless.  "An error is harmless only if it is inconsequential to the ultimate nondisability determination . . . or if despite the legal error, the agency's path may reasonably be discerned." Brown-Hunter, 806 F.3d at 494 (internal quotation marks and citation omitted) (finding that because the ALJ did not provide any reasons upon which her conclusion was based, the agency's path could not be reasonably discerned).  The Ninth Circuit has indicated that in order to consider an error harmless, the reviewing court must be able to "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Marsh, 792 F.3d at 1173 (finding failure to even mention physician's opinion not harmless).

Had the ALJ properly considered Dr. Kim's opinion, the

---

[14] Plaintiff also states the following without any further discussion: "As to Plaintiff's subjective complaints, the [ALJ] found that the objective medical evidence did not support [the] severity of Plaintiff's symptoms."  Opening Br. at 14.  The Court does not construe this statement as a basis for the Plaintiff's appeal of the ALJ's decision.

evidence of Plaintiff's psoriasis, and the WAIS-IV sub-test results, the ALJ would have reached a different finding at step two and might have reached a different finding at step three. In addition, the ALJ may have given a more restrictive RFC than the one given in her decision. That, in turn, might have led to a finding that Plaintiff is disabled. In light of these errors, this Court cannot confidently conclude that no reasonable ALJ would reach a different decision. Accordingly, the ALJ's errors were not harmless and her decision must be reversed.

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). However, where the record is fully developed and "further administrative proceedings would serve no useful purpose," a court should remand for an immediate award of benefits. Id. "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). However, the Ninth Circuit has cautioned that "[a] remand for an immediate award of benefits is appropriate . . . only in rare circumstances." Brown-Hunter, 806 F.3d at 495 (internal quotation marks omitted).

In this case, the Court finds that enhancement of the record would be useful. The Court, therefore, holds that remand

for further proceedings is appropriate for the ALJ to properly consider the evidence of Plaintiff's psoriasis, the opinion of Plaintiff's treating physician, Dr. Kim, on the psoriasis, and the WAIS-IV sub-test results.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision denying Social Security disability benefits and REMANDS to the ALJ for further proceedings consistent with this Opinion.[15]

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 15, 2017



_____
Alan C. Kay
Sr. United States District Judge

Betts v. Berryhill, Civ. No. 16-00409 ACK-KJM, Order Reversing the Decision of the Commissioner of Social Security and Remanding for Further Proceedings.

---

[15] Plaintiff has requested for the Court to award attorneys' fees and costs pursuant to 28 U.S.C. § 2412.  Opening Br. at 20. The Court finds Plaintiff to be the prevailing party and therefore entitled to attorneys' fees and costs.  Plaintiff may file a separate motion requesting such fees and costs and providing support for such relief before the Magistrate Judge, and Defendant will have the opportunity to object to such request.